UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x

HARRIET P. GROENEVELD,

          Plaintiff,

   -against-

ST. CHARLES HOSPITAL AND REHABILITATION CENTER a/k/a ST. CHARLES HOSPITAL, PORT JEFFERSON, NEW YORK,

          Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 07-CV-4803 (FB) (WDW)

*Appearances:*
*For the Plaintiff:*
WILLIAM D. WEXLER
William D. Wexler, Esq.
816 Deer Park Avenue
North Babylon, NY 11703

*For the Defendant:*
MARY ELLEN DONNELLY
MICHAEL CHRISTOPHER MOON
Putney, Twombly, Hall & Hirson LLP
521 Fifth Avenue
New York, NY 10175

**BLOCK, Senior District Judge:**

    Harriet P. Groeneveld ("Groeneveld"), a sixty-five-year-old woman, claims that St. Charles Hospital and Rehabilitation Center (the "Hospital") discriminated against her because of her age—then fired her in retaliation for her complaints about that discrimination—in violation of the Age Discrimination in Employment Act ("ADEA") and the New York State Human Rights Law ("NYSHRL").[1] The Hospital moves for summary judgment and, for the reasons that follow, the motion is granted.

---

[1] Groeneveld's complaint also alleged claims under the Health Insurance Portability and Accountability Act and the New York State Public Health Law; she voluntarily dismissed those claims with prejudice. DE #27.

I

The following facts are taken from the Hospital's Rule 56.1 statement, except where noted:[2]

In May 1997, the Hospital hired Groeneveld as a secretary in its Facilities Maintenance Department (the "Department"). From 1997 through 2001, Bill Mahalovich, the director of the Department, filled out a form each year reviewing Groeneveld's job performance. During that time, she received good annual reviews. Thomas Lyons took over as director from 2002 through 2004, and instead of reviewing Groeneveld himself, he had Harry Radenberg ("Radenberg") — the Hospital's Plant Coordinator — complete Groeneveld's annual reviews. During that time, too, Groeneveld received good reviews.

Groeneveld alleges in her 56.1 statement that in September 2004, Susan Murphy ("Murphy") — another secretary in the Department — accessed Groeneveld's medical records to acquire her date of birth for the purpose of throwing her a 60th birthday party at work.

Thomas Miranda ("Miranda") acted as director of the Department from late

---

[2]The Hospital properly submitted a statement of undisputed material facts, consisting of 72 numbered paragraphs, pursuant to Local Rule 56.1(a). Groeneveld was required under Local Rule 56.1(b) to submit a statement including "correspondingly numbered paragraph[s] responding to each numbered paragraph in the statement of the moving party." Instead, Groeneveld submitted her own Rule 56.1 statement consisting of eleven numbered paragraphs that neither correspond to nor respond to the paragraphs in the Hospital's statement. Under Local Rule 56.1(c), each paragraph of the Hospital's statement "will be deemed to be admitted for purposes of the motion." The Court has reviewed the parties' submissions to insure that any fact deemed admitted is supported by the record.

2004 until Michael Ingoglia ("Ingoglia") was hired in August 2005. Groeneveld's annual review for May 2004 through May 2005 stated that she was "unable, over the past year, to adequately perform many of the duties for her job description." Def.'s Ex. I. In her deposition, Groeneveld said that Miranda completed the 2005 annual review form; it was signed by both Miranda and Ingoglia.

On November 18, 2005, Groeneveld met with Ingoglia and Mark Boehrer ("Boehrer"), the Director of Human Resources, to discuss her inadequate job performance. During the meeting, Groeneveld asked to speak to Boehrer privately and informed him that she suspected Murphy had unlawfully accessed Groeneveld's husband's medical records to locate his room at the Hospital.

On November 29, 2005, Groeneveld again met with Ingoglia and Boehrer to discuss her job performance. Between the two meetings, Ingoglia discovered that Radenberg had been preparing the Department's payroll sheets, even though this was one of the duties listed in Groeneveld's job description. Groeneveld said that she had never prepared the payroll sheets, and had never inquired about why it was listed in her job description. Boehrer told Groeneveld that from then on she would have to prepare the Department's payroll sheets, and provided her with twelve weeks of training under Radenberg.

On November 30, 2005, Boehrer met with Murphy to discuss Groeneveld's allegation that Murphy had unlawfully accessed Groeneveld's husband's medical records. Boehrer determined that Murphy had indeed done so, gave her an employee warning

3

notice, and required her to attend training.

At the end of December 2005, Ingoglia told Boehrer that Groeneveld's job performance continued to be inadequate: she took inaccurate phone messages, misfiled documents, fell behind on other tasks, and could not follow Ingoglia's instructions. Boehrer told Ingoglia to meet with Groeneveld again to discuss her job performance.

On February 9, 2006, Groeneveld again met with Ingoglia and Boehrer to discuss her job performance. During that meeting, Ingoglia issued a written warning to Groeneveld, which stated that if her job performance did not improve, further disciplinary action would be taken, including termination. On March 7, Ingoglia gave Groeneveld another written warning.

On April 6, 2006, Boehrer told Groeneveld that her employment at the Hospital would be terminated because of her inability to adequately perform her job duties. On May 4, 2006, Boehrer met with Groeneveld to discuss a severance agreement, which Groeneveld refused to sign; Groeneveld was terminated the same day.

Groeneveld filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 4, 2006. In her EEOC charge, she claimed that her "new supervisors had repeatedly and falsely accused [her] of being forgetful, suffering from memory loss, transposing telephone numbers and misplacing and incorrectly completing paperwork," and "implied [she] was too old to perform [her] job." Def.'s Ex. G. She further claimed that after she complained to human resources about her treatment, and that "a co-employee had improperly . . . accessed [her] medical records and

acquired [her] date of birth," *id.*, her supervisors "adversely changed [her] job duties and employment conditions," *id.*, and later used her allegedly deficient job performance as a pretext for firing her. Finally, Groeneveld stated: "I believe that a younger individual has taken over my job or job duties." *Id.* The EEOC issued her a right to sue letter on September 7, 2007.

II

In ruling upon a motion for summary judgment, the Court "must determine (a) whether there is a 'genuine issue as to any material fact,' and (b) whether, in light of the undisputed facts, 'the movant is entitled to judgment as a matter of law.'" *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (quoting Fed. R. Civ. P. 56(c)(2)). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010) (internal quotation marks omitted). Further, "facts must be viewed in the light most favorable to the nonmoving party." *Ricci v. DeStefano*, 129 S.Ct. 2658, 2676 (2009).

III

A. Age Discrimination

Where there is no direct evidence of discrimination, age discrimination claims are analyzed using the familiar *McDonnell Douglas* burden-shifting framework:

> [T]he plaintiff bears the initial burden of establishing a prima facie case of discrimination. If the plaintiff does so, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's

5

determination was in fact the result of discrimination.

*Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (internal citations and quotation marks omitted). Age must be "the 'but-for' cause of the challenged adverse employment action and not just a contributing or motivating factor." *Id.* (citing *Gross v. FBL Financial Services, Inc.*, 129 S.Ct. 2343, 2352 (2009)).

## 1. *Prima Facie Case*

To establish her prima facie case, Groeneveld must show: "(1) that she was within the protected age group, (2) that she was qualified for the position, (3) that she experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of discrimination." *Gorzynski*, 596 F.3d at 107. It is undisputed that Groeneveld satisfied the first and third elements, as she was over 40 years old and was fired from her job. *See id.* The Hospital disputes whether Groeneveld was qualified for her position, but because she had held her job for seven years before the Hospital fired her, this element is also satisfied. *See Gregory v. Daly*, 243 F.3d 687, 696 (2d Cir. 2001) ("In a discharge case in which the employer has already hired the employee into the job in question, the inference of minimal qualification is, of course, easier to draw ... because, by hiring the employee, the employer itself has already expressed a belief that she is minimally qualified.").

The Hospital also disputes whether Groeneveld has satisfied the fourth element, namely, an adverse employment action occurring under circumstances giving rise to an inference of discrimination. Construing her papers charitably, Groeneveld claims to

have satisfied this element for two reasons. First, Groeneveld argues that "the disturbing violation of plaintiff's medical records by [Murphy] *for the express purpose of determining plaintiff's age* must at the very least show that she was treated differently from her coworkers with respect to the conditions of her employment." Pl.'s Mem. of Law at 7. There is no evidence, however, that Murphy played a role in the Hospital's decision to terminate her employment, and "[a]ctions by an individual not involved in the adverse employment decision at issue do not give rise to an inference of discrimination." *Chang v. Safe Horizon*, No. 03-CV-10100, 2005 WL 2125660, at *7 (S.D.N.Y. Sept. 1, 2005) (citing *McLee v. Chrysler Corp.*, 109 F.3d 130, 137 (2d Cir. 1997)).

Second, although she did not make this argument in her memorandum of law, Groeneveld alleged in her complaint that the Hospital replaced her with "a younger employee believed to be in her early 30's." Compl. ¶ 20. If supported by evidence, this allegation would satisfy the fourth element. *See D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 195 (2d Cir. 2007) (holding an eight-year age difference "significant enough to support an inference" of discrimination). Groeneveld has not, however, provided evidence to support this allegation, and the bare allegations of a complaint are insufficient to prevent summary judgment. *See Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading; rather his response, by affidavits or otherwise as provided in the Rule, must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" (citing

Fed. R. Civ. P. 56(e)).

Thus, Groeneveld has not provided evidence sufficient to raise in inference of discrimination, and has failed to establish her prima facie case.

## 2. *Legitimate, Non-Discriminatory Reason and Pretext*

Assuming, *arguendo*, that Groeneveld has established a prima facie case of age discrimination, Groeneveld has not satisfied her burden of showing that the Hospital's reason for terminating her—inadequate job performance—was pretextual. Once a defendant proffers a legitimate non-discriminatory reason for its employment decision, "the question . . . becomes simply whether the evidence in plaintiff's favor, when viewed in the light most favorable to the plaintiff, is sufficient to sustain a reasonable finding that her dismissal was motivated at least in part by age discrimination." *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 114 (2d Cir. 2007) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000)). Groeneveld has provided no evidence that any decisionmaker at the Hospital ever considered her age.

## B. Retaliation

Retaliation claims under the ADEA are also analyzed under the *McDonnell Douglas* burden-shifting framework. *See Gorzynski*, 596 F.3d at 110. To establish a prima facie case, Groeneveld must show: "(1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Id.*

The Hospital argues that Groeneveld cannot satisfy the first element, because

she did not engage in "protected activity" under the ADEA. Groeneveld's papers opposing summary judgment do not address her retaliation claim, but her complaint alleges that she was terminated in retaliation for "complaining to the Defendant regarding a co-employee's unlawful access to the Plaintiff's medical records[.]" Compl. ¶ 30. The ADEA prohibits an employer from retaliating against an employee for "oppos[ing] any practice made unlawful by [the ADEA]." 29 U.S.C. § 623(d). Practices made unlawful by the ADEA are employment decisions made "because of [an] individual's age." *Id.* §§ 623(a)(1), (2). Groeneveld complained to Ingoglia and Boehrer that Murphy had accessed Groeneveld's husband's medical records to locate his room at the Hospital; despite the allegation in her complaint, there is no evidence that Groeneveld told Ingoglia or Boehrer that she suspected Murphy had previously accessed Groeneveld's own records. Be that as it may, complaining about a co-worker's unlawful access of medical records is not opposing a practice made unlawful by the ADEA because it has nothing to do with age. Thus, Groeneveld's complaint to Ingoglia and Boehrer regarding Murphy's access to medical records is not a "protected activity."

IV

"In deciding whether to exercise jurisdiction over supplemental state-law claims, district courts should balance the values of judicial economy, convenience, fairness, and comity[.]" *Klein & Co. Futures, Inc. v. Board of Trade*, 464 F.3d 255, 262 (2d Cir. 2006). Groeneveld's claims under the NYSHRL are analyzed under the same standards as claims brought under the ADEA. *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009).

9

Where, as here, state- and federal-law claims are governed by the same standards, judicial economy is best served by exercising supplemental jurisdiction. *See Chambers v. Capital Cities/ABC*, 851 F. Supp. 543, 545 (S.D.N.Y. 1994) ("Duplicative litigation at multiple levels of government involving the same facts [is] contrary to the objectives of the Supplemental Jurisdiction Act and the public interest."). Accordingly, the Court exercises supplemental jurisdiction over Groeneveld's state-law claims, and grants summary judgment on them for the same reasons set forth above.

## V

The Hospital's motion for summary judgment is granted in its entirety.

**SO ORDERED.**

s/ Judge Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 16, 2011